By The Court. Bosworth, J.
The affidavit, made by Dunlap, to procure a postponement of the trial of Shelton against Westervelt, was read in evidence without objection. That shows very clearly that Dunlap himself not only had actual notice of the pendency of that suit, but undertook the defence of it, so far as to endeavor to procure the testimony of witnesses deemed material, and that its defence was regarded by him as a defence made by himself. It also appears, by his own testimony, that he was present at the trial of Russell v. Westernvelt, and that he therefore had notice of that suit, and, presumptively, an opportunity to defend it.
*456 Considering the relation he occupied towards the sheriff, the fact of his having the exclusive control of the ■ executions, and the further fact, that, during the pendency of the stiit brought by Shelton, he made the affidavit, and deposed to the matters stated in it, to procure a postponement of that trial | and the further fact, that both suits were Commenced in the same month, and defended by the same attorneys, I think are evidence sufficient, uncontroverted, to justify a jury in finding that Dunlap had notice of the pendency of both suits, and an opportunity td defend. It was not obj écted, however, that sufficient notice of the pendency of these suits had not been given to Dunlap, but that no notice had been given to the defendant, his surety. If the view expressed, that there is sufficient proof of notice of them to Dunlap, be correct, then the judgments recovered against Westervelt were not only primé fade§ but were conclusive evidence of Dunlap’s liability to Westervelt, Co-extensive with that of Westervelt to those plaintiffs, according to the form, force, and effect of such recoveries.
If they would conclude Dunlap in an action against him, on this bond, the question remains whether they are any evidence of the liability of Bartlett Smith in this action? The question, in this case, is not whether they are conclusive evidence against the surety, but whether they are primó, fade evidence ?—after first proving that these executions were in the hands and under the control of Dunlap.
In Barlett v. Campbell (1 Wend. 50), Campbell signed as Surety for Jeffor ds an indemnity to the plaintiff as constable, to induce him to levy on, and sell, on an execution in favor of Jeffords, certain personal property. He did levy on and sell it. He was sued by A. Shaw, who claimed the property as his. The plaintiff gave notice of the Commencement of that suit to Jeffords, but not to Campbell, and allowed judgment to pass by default. Bartlett, in the suit against Campbell, was nonsuited because no notice of the suit had been given to the latter. The Supreme Court reversed the judgment solely on the ground that that decision was erroneous, and that notice td the principal was sufficient to make the judgment against the plaintiff prvrááfdóie evidence of the liability of the surety in an action against him,
Where a want of good faith, industry, and sound discretion *457 in the defence of the suit is not pretended, notice to the surety, in a case like this, is practically an idle ceremony. The surety cannot he presumed to be cognizant of any facts connected with the defence. When his principal, the deputy, has had notice of the suit, has actually assumed its defence, and it has been fully tried on its merits. With the aid of all the information relative to the merits possessed by the party whose conduct is the subject of controversy, it cannot be presumed that another trial, when defended by the surety instead of the deputy, could be attended with any different result,
1 Euless some principle or right is clearly violated, by an ad» Iterance to the decision in Bartlett v. Campbell, it Would seem to be the duty of the court to follow it, It was decided some twenty-five years ago, and does not appear to have been since questioned by the court that made it,
The questions at issue, and to be determined in this action, are these: Had Dunlap so negligently performed his duties in respect to these tWo executions that Westervelt had been dam» nified thereby, and, if so, to what amount ? The evidence pro» duced established the facts, that as between Westervelt and the plaintiffs in those two executions, it had been incontrovertibly determined, that Westervelt should pay the amount of those two judgments, by reason of a neglect or improper performance of official duty, with respect to them, The evidence given was also conclusive against Dunlap that the fault was his own, and of his liability to pay to Westervelt the same amount, The liability of Dunlap to Westervelt, as between themselves, the defendants could not controvert 5 tio fraud, or want of good faith in conducting the defence being averred, (Candee v. Lord, 2 Coms. 275.) Dunlap being personally concluded as to his own liability, does not the evidence which establishes it, at least that of the defendant l
Does not evidence, which is conclusive against Dunlap of his breach of the bond, at leastprim&fdoie, prove his breach of it, as against the surety ? The reasoning of the court in Drummond v. Preston (12 Wheat. 515), directly supports this propo» sition, and affirms the principle, that evidence which is compe» tent to show the default and which establishes the liability of the principal, at least primd facie, establishes the liability *458 of a surety, who has undertaken that the acts or omissions of his principal shall not damnify the plaintiff. In Drummond v. Preston, the court considered the case of Beal v. Beck, reported in 3 Harris and M'Henry, 243, and disapproved of it, if it was to be regarded that such a record was not primA facie evidence against a surety, but agreed that it was properly decided, if the record Was offered as conclusive against the surety.
In Lee v. Clark (1 Hill, 56), the condition of the bond was, that Parmenter (for whom Clark signed as surety) “ should pay or save the plaintiff harmless.” A verdict, in a suit against Parmenter, of Which Clark, the surety, had no notice, was heldprima facie evidence of the amount of the surety’s liability, Duffield v. Scott (3 T. R. 374) was cited as an authority eon» elusive Upon the case, and sound in its principles,
The bond in suit is conditioned, among other things, to inderm hify Westervelt against “all damages, costs, and charges whatsoever, hereafter to be imposed, or demandable of or against him.”
Certain damages, Costs, and charges are proved by evidence Conclusive, as against Dunlap, to have been imposed upon, and to be demandable of him, by reason of defaults of Dunlap, against Which the defendant undertook to indemnify him. This bond is conditioned against some of the same matters as that in Duffield v. Scott, viz, against “ all costs, charges, and expenses whatsoever, which the plaintiff, at any time thereafter, should pay, sustain, or be put tinto,” &c, (3 T. R. 374.)
The terms of the bond in suit imply, . that the obligors anticipated suits would be brought to charge the sheriff for alleged defaults of the deputy, Dunlap, and by it the obligors agreed to indemnify the plaintiff against all “issues and demands ” prosecuted, and against “ all fines, demanda, costs, and charges ” imposed or demandable of him by reason of such default.
When suits are proved to have been brought against the sheriff, which resulted in imposing demands, costs, and charges Upon him, which he has been compelled to pay, and such further evidence is given, competent as between these parties, as establishes conclusively the personal liability of Dunlap, as between him and the plaintiff, it seems to me that, as a matter *459 of common sense,- it also establishes; jyrintA facie$ as against Ms surety, the fact of such liability, and that such damages; costs, and Charges were so imposed by reason of Dunlap’S default.
In Franklin v. Hunt (2 Hill; 671); which Was an action against the deputy, Anderson,- and his sureties, to recover a bill of costs, to which the sheriff had been subjected in successfully defending a suit brought to recover a penalty by reason of alleged violation of official duty by the deputy,- the pleader Merely alleged notice to the deputy,- and averred no notice to the sureties of such action, Although the case presents no question decisive of any point named in the case,- the pleadings indicate ah Understanding of the profession, that notice to the deputy, without notice to Ms sureties, Was sufficient to make the record of recovery against the sheriff, in stich a ease, evidence against the deputy’s surety.
In Lewis v. Knox (2 Bibb. 453); in an action on the suretybond of the deputy, the court below held the' record of a reco-» very against the sheriff for ncrt returning an execution; evidence of the deputy’s liability, without proof of the fact that the execution had been iu Ms hands. The court above reversed the judgment on the declared ground that the record was not evi-> dence, Unless accompanied with proof that the execution had been placed in the charg'd of the deputy. It" does not appear from the report of the case, that notice' of the suit was given to the deputy. The decision implies that the court was of the opinion that the record of the recovery against the sheriff, with proof that the deputy had charge of the executions; Was jyt'imd fade evidence of the liability of the deputy and Ms sureties in an action against them by the sheriff. (Vide Atkins v. Baily et al., 9 Yager, 111.)
In this case that evidence was given, and in addition to it, it was proved that the deputy had notice of the pendency of both actions against the sheriff, actually participated in the defence of one of them, and the inference is not an unreasonable one, that he took part in the defence of the other.
The theory of the rule, that notice to the sureties of an action brought against their principal, and the tender of an opportunity to defend, make the recovery against the principal *460 conclusive against the latter is, that they operate to make the judgment, in legal effect, a judgment against themselves, "Whatever is conclusive evidence against the deputy is, at least, primó facie evidence against his sureties,
Tyler v. Ulmer (12 Mass. 164) was an action against the sheriff for the default of Hinott, his deputy, in not satisfying an execution out of goods Which the latter had attached at the suit of the plaintiff. The evidence that Hinott had received the execution in time to make it his duty to levy it, consisted of letters from him to the plaintiff’s attorney. To the admission of this -evidence the defendant excepted. The court held the letters to be properly admitted, and said that “ the action, although in form against the sheriff, is substantially against the deputy, who is immediately answerable over to the sheriff upon his bond, and against whom the verdict may be used as evidence ' to establish the claim of the sheriff against him.’
“We are also well satisfied that the practice has uniformly been to prove the necessary facts by the confession, oral or Written, of the deputy in actions against the sheriff.” (2 Phil. Ev., 7th edition, 379--380; Mott et al. v. Kip, 10 J. R. 473.)
City of Lowell v. Parker et al. (10 Metcalf, 309) Was an action brought in behalf of one Bean against Parker, a constable, and his sureties, to recover the amount of a judgment previously obtained by Bean against Parker, for the Value of property taken by the latter colore officii, 'Parker’s sureties had no notice of the pendency of that action, and the question was, Whether the judgment against Parker was evidence against the sureties of a breach of duty by Parker,
The court said: “But it is objected that this judgment was hot admissible, because the sureties were not notified, and therefore it Was res iter alios,' But we think this objection cannot be supported under the circumstances of this case. When one is responsible, by force of law ol- by contract, for the faithful performance of the duty of another, a judgment against that other for a failure in the performance of such duty, if not collusive, is primé facie evidence in a suit against the party so responsible for that other. If it can be made to appear that such judgment was obtained by fraud or collusion, it will be wholly set aside. But otherwise it is primó fade evi *461 dence, to stand until impeached or controlled, in whole or in part, by countervailing proofs.”
In the case last cited, the constable was concluded by a recovery against himself. Of the suit in which it was had, his sureties had no notice.
In the case before us, evidence of the deputy’s default which concluded him, was given. In either case such evidence was competent proof of his default in an action against the sureties, andjfriraA facie established it as against them.
In Train v. Gould (5 Pick. 380) the defendant agreed with the plaintiff, that one Ashley, who had given the plaintiff an indemnity bond against the consequences on levying on property pointed out by Ashley, should indemnify (him) in the premises according to the terms of his engagement to (the plaintiff),” The plaintiff was sued by one Touro for taking the property, and the latter recovered, Grould had no notice of the pendency of Touro’s suit against the plaintiff, but there was evidence tending to show that Ashley had notice of it. The evidence was not very explicit, and there was some reason to doubt whether Ashley had such notice as gave him an opportunity to defend it, The judgment recovered by Touro against the plaintiff was put in evidence against the objection of the defendant,
The court charged the jury that" if they were satisfied that Ashley had seasonable notice to prepare for the defence of that suit, they must consider it conclusive \ but if they were not so satisfied, they must consider it as only ymvrm facie evidence, and must determine upon all the evidence whether Touro ought to have recovered in that suit, and if so, how much.” The jury found for the plaintiff. The defendant moved for a new trial, upon exceptions taken to the decision of the court, and on a case on the further ground that the verdict was against evidence.
The court held the instructions given to the jury to be clearly correct, and stated that, from the amount of the damages found, it must be presumed the jury considered the judgment conclusive, •
It will be noticed that Train v. Gould was against the' surety only, and that his liability arose upon an instrument *462 separate from that signed by Ashley, his principal, and of a subsequent date. In that respect, it was a weaker ease for the application of the rule which the court held to be controlling, than that of Bartlett v. Campbell (1 Wend. 50),
In this case it is not necessary to go as far as the court went .in Train v. Gould, to hold that the plaintiff is entitled to a judgment on the verdict. It is only necessary to hold, that as the evidence given was competent, and concluded Dunlap on the questions of his default, liability, and the extent of it, it prima faoie established them against Bartlett Smith, who, by his contract, undertook that Dunlap should not be guilty of any default, and that the plaintiff should not be damnified by it, This bond seems to be more than a contract of indemnity against damages to result from liabilities to which the sheriff may be subjected by reason of the deputy’s default. Its condition is totally unlike that of the bond in Gilbert v. Winans (1 Comst. 550), The condition of that was that the 4 sheriff should not sustain any damage or molestation whatever by reason of any act from this date done, or any liability incurred by and through said deputy,” The latter ease was held not to be an indemnity against a liability or charge, but against actual damages resulting from a liability or charge,
In this case the defendant contracts to indemnify the plaintiff " against all issues, fines, demands, damages, costs, and charges whatsoever, hereafter to he produced, imposed, prosecuted, demanded or demandable, of or against the said John J. Y. Westervelt, as sheriff as aforesaid.”
It is an indemnity against " damages imposed 5” " costs and charges imposed $” and " damages, costs, and charges demand-able” of him. If it is an undertaking that no damages should be demandable of him, aud no costs and charges imposed upon him by reason of Dunlap’s default, then it was an indemnity against a legal liability, and the recovery of the judgments against Westervelt, for the default of Dunlap, was itself a breach of the bond, and entitled the plaintiff to recover.
The terms of the condition would seem to be as comprehensive as the terms of the contract of indemnity in Chase v. Hinman (8 Wend. 452), and Warwick v. Richardson (10 Mees. & Welsby, 284). These were held to be indemnities against a *463 legal liability, and those cases are cited with approbation in Gilbert v. Winans.
In Warwick v. Richardson, it was an indemnity against "claims made in this case, it is against" damages, costs, and charges imposed,” or "demandable,”
In this ease, the plaintiff was to be saved from damages, costs, and charges imposed upon, or demandable of Mm. That was the act to be done, Its non-performance was a breach of the bond, and the legal liability of the sheriff, or, in other words, the amount of the damages, costs, and charges imposed upon and demandable of him, is the measure of damages. Damages, costs, and charges have been iucoutrovertibly imposed, and are ineontrovertibly demandable to the amount of the judgments recovered, in “ issues prosecuted ” against the present plaintiff, Many of the cases already eited are full to the point, that the sheriff is equally entitled to recover the necessary costs of a defence, made in good faith, as the costs awarded against him, and forming part of the judgments.
Under all the circumstances of this case, we thinfe the sheriff is entitled to a judgment on the verdict,